**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HAVERHILL CHEMICALS LLC,** | § | **CASE NO. 15-34918** |
| | § | |
| **DEBTOR.** | § | |
| | § | **(Chapter 11)** |

**EMERGENCY MOTION FOR ENTRY OF AN ORDER:**
**(I) AUTHORIZING THE DEBTOR TO PAY PRE-PETITION EMPLOYEE SALARIES,**
**REIMBURSABLE EMPLOYEE EXPENSES, EMPLOYEE BENEFITS AND OTHER**
**COMPENSATION; AND (II) DIRECTING ALL BANKS TO HONOR CERTAIN**
**RELATED PRE-PETITION TRANSFERS**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 23 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 23 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

Haverhill Chemicals LLC (the "Debtor") submits this Emergency Motion for Entry of an Order (I) Authorizing the Debtor to Pay Pre-Petition Employee Salaries, Reimbursable Employee Expenses, Employee Benefits and Other Compensation; and (II) Directing All Banks

to Honor Certain Related Pre-Petition Transfers (the "Motion"). In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's Chapter 11 case (the "Chapter 11 Case") in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for relief sought herein are §§ 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3.      On September 18, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

4.      The Debtor continues to administer its assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtor's bankruptcy case and no official committee of unsecured creditors has been established.

5.       In light of its current financial condition, the Debtor determined that the maximum value will be realized for creditors through a Section 363 sale of the Debtor's assets and operations.  Accordingly, the Debtor filed this Chapter 11 Case in order to complete a sale of substantially all of the Debtor's assets (primarily comprised of a chemical plant located in Haverhill, Ohio) to a designated buyer (subject to higher or better offers in accordance with Court-approved bid procedures) and to monetize the remaining assets not included in this sale

(e.g., accounts receivable and certain inventory).

6.     The Declaration of Thomas M. Wells in Support of Chapter 11 Petition and First Day Pleadings (the "Declaration") filed on the Petition Date is incorporated herein.

**A.     Debtor's Employees, Independent Contractors and Temporary Workers**

7.     As of the Petition Date, the Debtor's workforce is comprised of fifty-three (53) employees (the "Employees") and one (1) independent contractor (the "Independent Contractor"). All of the Employees are full-time employees. The Debtor has twenty-four (24) salaried employees and twenty-nine (29) employees paid on an hourly basis.

8.     For salaried employees, the salaries range from approximately $50,000.00 to $144,500.00. For employees paid on an hourly basis, hourly wages range from $31.74 per hour to $36.04 per hour. All hourly employees are overtime eligible. Some of the hourly employees have built in overtime meaning that on a bi-weekly basis such Employees have 76 hours of regular time and 8 hours of overtime.

**B.     Pre-Petition Salary, Benefits and Other Compensation**

9.     As a general matter, the Debtor uses one operating account for paying the salaries, wages, and related employment benefits to Employees on a biweekly basis (collectively, the "Payrolls"). In addition, the Debtor is required by law to (i) match the Social Security and Medicare taxes, (ii) based on a percentage of gross payroll, pay additional amounts for state and federal unemployment insurance and (iii) remit these payroll taxes to various taxing authorities (the "Employer Payroll Taxes").

10.     The Debtor processes the Payrolls through ADP, LLC (including its successors and assigns, "Payroll Processing Company") and makes all payments via direct deposits. The Debtor requests the authority to continue to pay the regularly scheduled Payrolls and honor Payrolls made on the Petition Date, including Employer Payroll Taxes, in the ordinary course of

business, including any pre-petition amounts that may have accrued but not become payable as of the Petition Date.

11.     In the ordinary course of business, the Debtor also causes certain Payroll deductions to be automatically made for Employee obligations, such as federal income taxes, Social Security and Medicare contributions, court-ordered garnishment and support payments, benefit plan insurance programs, and other similar programs (collectively, the "Deductions").

12.     The Independent Contractor whom the Debtor intends to continue to utilize post-petition in the ordinary course of business provides Chief Financial Officer services that are integral to the ongoing operation of the Debtor's business.  The weekly rate for the Independent Contractor is $5,000.00.  The Company does not withhold any amounts from the Independent Contractor compensation.

**C.     Payment of Reimbursable Expenses**

13.     Prior to the Petition Date and in the ordinary course of business, the Debtor reimbursed Employees for reasonable expenses incurred in performing their jobs, including, but not limited to, business-related travel, automobile expenses, lodging and meals in accordance with certain per diem rates (the "Reimbursable Expenses").  Reimbursable Expenses were incurred on behalf of the Debtor in the ordinary course of business with the expectation that such expenses would be reimbursed in accordance with past practice.

14.     Under the Debtor's reimbursement policy, the Employees must submit expenses through expense reports.  Because Employees do not always submit reimbursement claims promptly, it is difficult to determine the exact outstanding amount at any one time, but these amounts are nominal.  As of the Petition Date, the Debtor believes that that the total reimbursable expense incurred but not yet submitted is less than $5,000.00.

**D.**     **Continuation and Payment of Pre-Petition Employee Benefits**

15.     The Debtor's regular, full-time employees that work a minimum of thirty-two (32) hours per week on average ("Eligible Employees") are eligible for various standard employee health and welfare benefits, including, without limitation, (a) medical, dental, vision and prescription drug coverage; (b) healthcare savings accounts, (c) basic life and voluntary life insurance; (d) accidental death and dismemberment ("AD&D") insurance; and (e) short-term and long-term disability benefits (collectively, the "Employee Benefits").[1]

16.     Medical, Dental, Vision and Prescription Drug Coverage: Eligible Employees are offered the choice between two PPO health insurance plans through United Healthcare and two high deductible plans through United Healthcare.  Each of these four plans includes prescription drug benefit plans also through United Healthcare.  Dental insurance is provided through The Guardian Life Insurance Company of America ("Guardian").   Vision Service Plan provides vision insurance that is entirely employee paid.  Other than for vision insurance, the Debtor pays a portion of the cost for these standard health benefits, and the Employee is responsible for paying the balance through payroll deduction.

17.     Health Savings Accounts: Employees that select the high deductible health insurance plans may elect to enroll in health savings accounts provided by Optum Health, a subsidiary of United Healthcare.  The health savings accounts allow Employees to put in pre-tax amounts into the plan to be used for certain health-care related costs.   The participating Employee's gross pay is reduced by an amount equal to the employee's contributions, as elected annually during the open enrollment period.

18.     Life and AD&D Insurance:   Eligible Employees are provided basic life and

---

[1]     The Debtor participates in a group that collectively purchases Employee Benefits by and through Vinmar Trade Solutions, LLC.  The Debtor is only financially responsible for its pro rata share of group benefits.

AD&D coverage through Guardian. The Debtor pays 100% of the basic life insurance premiums. Employees may also elect to receive AD&D insurance. The Employees are responsible for 100% of the premiums for the AD&D insurance. These plans are through Guardian.

19.     <u>Short-Term and Long-Term Disability</u>: Eligible Employees are provided basic short-term and long-term disability coverage through Guardian. The Debtor pays 100% of the costs.

20.     As of the Petition Date, the Debtor was obligated to pay certain premium contributions to or provide benefits under the foregoing programs, plans and policies.

**E.      Paid Time Off Benefits**

21.     Paid time off benefits ("<u>PTO</u>") are available to eligible full-time employees. Employees may use PTO for vacations, sick days, holidays, personal business, and other reasons. PTO is paid at the Employee's base pay rate at the time of leave. Employees are allowed to carry-over up to a maximum of forty (40) or sixty (60) hours of PTO based on work schedule into the following year. Employees accrue PTO at the rates listed in the chart below.

| Length of Employment | Accrual Rate | Total Accrual Per Year |
|:---:|:---:|:---:|
| 0 – 4 years | 9.33 hours/month | 112 hours/year |
| 5 – 9 years | 12.67 hours/month | 152 hours/year |
| 10 – 19 years | 16.00 hours/month | 192 hours/year |
| 20+ years | 19.33 hours/month | 232 hours/year |

22.     In the event of resignation or termination for any reason, any accrued but unused PTO will be paid to employee with their final paycheck. Upon termination of employment, employees will be paid for PTO accrued through the last day of work. However, if the Debtor,

in its sole discretion, terminates employment for cause, forfeiture of all accrued but unused PTO

may result.  If an employee leaves the employment of the Debtor for any reason and has taken

more PTO than accrued, the difference will be taken from the employee's final paycheck.

## RELIEF REQUESTED

23.     By this Motion, the Debtor requests the entry of an order authorizing, but not

directing, the Debtor to pay, continue or otherwise honor pre-petition obligations (collectively,

the "Pre-Petition Employee Obligations") to or for the benefit of its Employees for salaries and

other compensation and benefits under all plans, programs and policies implemented by the

Debtor prior to the Petition Date (as set forth below, the "Employee Programs").  The Debtor

seeks immediate authority to make payments to the Employees on account of Pre-Petition

Employee Obligations up to the priority expense limit imposed on employee claims under

§ 507(a)(4) of the Bankruptcy Code (the "507(a)(4) Limit").

24.     Specifically, (a) under §§ 105(a) and 363(b)(1) of the Bankruptcy Code, the

Debtor asks the Court to authorize, but not direct, the Debtor to pay any obligations to or for the

benefit of its Employees arising under the Employee Programs that were accrued or earned but

unpaid as of the Petition Date; (b) under § 363(c)(1) of the Bankruptcy Code, the Debtor requests

that the Court confirm its right to continue each of the Employee Programs described herein

during the pendency of this case, to continue to make payments thereunder in the manner and to

the extent consistent with and required by the Employee Programs that were in effect

immediately prior to the Petition Date, and to make payments in connection with expenses

incurred in the administration of any Employee Program.

25.     The Employee Programs under which the Pre-Petition Employee Obligations

arise are described more fully herein and include, without limitation, plans, programs, policies

and agreements providing for (a) regularly incurred salaries, incentive bonuses, ordinary course

severance, paid time off and other accrued compensation, (b) reimbursement of business, travel and other reimbursable expenses and (c) various insured and self-insured employee health and welfare benefits.

26.     The Debtor also seeks authorization to pay any and all local, state and federal withholding and payroll-related or similar taxes relating to the Pre-Petition Employee Obligations, including, but not limited to, all withholding taxes, Social Security taxes and Medicare taxes.  In addition, the Debtor seeks confirmation that it is permitted to pay to third parties any and all amounts deducted from Employee paychecks for payments on behalf of Employees, including, without limitation, garnishments, support payments, tax levies, benefit plans, insurance programs and other similar programs.  Further, the Debtor seeks the authority, but not the direction, to continue using Payroll Processing Company to handle the Deductions and Employer Payroll Taxes.

27.     The Debtor further requests that it be authorized, but not directed, to pay the hourly fees of the Independent Contractor for pre-petition services which the Debtor depends upon for the continued operation of its business.  The Debtor seeks authority (but not direction) to continue the payments that may come due to its Independent Contractor post-petition.

28.     The Debtor further requests that, with respect to any Employee Programs and Pre-Petition Employee Obligations that are administered or paid through a third-party administrator, agent, consultant or provider (the "Administrators"), the Debtor be expressly authorized to pay any pre-petition fees of the Administrators and to continue such payments post-petition in order to ensure the uninterrupted delivery of payments or other benefits to the Employees.

29.     In aid of the foregoing relief, the Debtor requests that the Court authorize and direct all banks to receive, process, honor and pay any and all checks drawn on the payroll and

other bank accounts used by the Debtor to satisfy its Pre-Petition Employee Obligations, whether presented before, on or after the Petition Date, and authorizing the banks to rely on the representations of the Debtor as to which checks are subject to this Motion, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Debtor additionally requests that the Court authorize it to issue new post-petition checks to replace any checks that may be dishonored and to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a pre-petition check.

30.    The amounts to be paid post-petition to any employee for Pre-Petition Obligations will not exceed the 507(a)(4) Limit.

**BASIS FOR RELIEF**

31.    The Debtor's ability to wind down its business in a safe and efficient manner is dependent on the continued enthusiasm, services, and expertise of its Employees. Due to the disruption and stressful uncertainty that typically accompanies Chapter 11 filings, the Debtor believes that the morale of its Employees may be adversely affected if it is not able to assure them that they will be fully paid for the work they have performed, whether before or after the Petition Date, and can rely on the benefits provided to them under the Employee Programs.

32.    The Debtor has determined that continuation of the Employee Programs is vital to its ability to preserve Employee morale during the pendency of this Chapter 11 case and to reduce the level of Employee attrition that might otherwise occur.  Minimizing such attrition and the consequent disruption to the Debtor's business operations is critical to the Debtor's ability to preserve and enhance value for the benefit of the Debtor, its estate and all stakeholders.

33.    In addition, if the Debtor fails to pay the Pre-Petition Employee Obligations, its Employees will suffer extreme personal hardship. Many employees live paycheck to paycheck and would suffer severe adverse consequences if they failed to receive their full compensation.

Such a result would have a highly negative impact on the morale of Employees who have a reasonable expectation of compensation for services rendered and likely would result in unmanageable turnover, thereby resulting in immediate and irreparable harm to the Debtor and its estate. Honoring the Pre-Petition Employee Obligations will minimize the level of disruption and preserve the loyalty of Employees so necessary for any successful reorganization.

**A.      The Proposed Payments Should Be Authorized Under Bankruptcy Code Section 507**

34.      Pursuant to §§ 507(a)(4) and 507(a)(5) of the Bankruptcy Code, certain claims for compensation are accorded priority in payment in an amount not to exceed $12,475.00 for each employee (to the extent such amounts accrued within one hundred eighty (180) days of the Petition Date).  The overwhelming majority of the Employees are owed compensation amounts within the statutory priority cap of §§ 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  Thus, granting the relief requested is consistent with the Bankruptcy Code's purpose of ensuring that employees are paid in full up to the statutorily imposed limit due to the priority status of their claims.

**B.      The Proposed Payments Are Appropriate Under Bankruptcy Code Section 363**

35.      Under § 363 of the Bankruptcy Code, the Bankruptcy Court is empowered to authorize a Chapter 11 debtor to expend funds in the Bankruptcy Court's discretion outside the ordinary course of business.  *See* 11 U.S.C. § 363.  In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use.  *See Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (holding that § 363(b) requires that "there must be some articulated business justification for using, selling, or leasing estate property outside the ordinary course of business"); *U.S. Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, No. 02 Civ. 2954 (MBM), 2003 WL 21738964, at *12

10

(S.D.N.Y. July 28, 2003) ("To approve a transaction under § 363(b), the Bankruptcy Court must find that there is a good business reason to allow the transaction"); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) (applying *Continental* to require "articulated business justification" for § 363 transaction); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) ("[A] § 363 application requires a showing that there is a 'good business reason to grant such an application.'") (quoting *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

36.     The payment of all Pre-Petition Employee Obligations, as set forth herein, serves the sound business purpose of maximizing the value of the Debtor's estate.  The Debtor's success in this case hinges in large part on the morale and continued efforts and dedication of the Employees.  Through the payment of the Pre-Petition Employee Obligations, the Debtor seeks to motivate and encourage the Employees to continue to support the Debtor's restructuring efforts. Accordingly, the Bankruptcy Court should grant the requested relief under § 363 of the Bankruptcy Code.

## C.     The Payment of the Deductions Is Appropriate Under the Bankruptcy Code

37.     Payment of the Deductions will not prejudice the Debtor's estate, because such withholdings are held in trust for the benefit of the related payees and thus do not constitute property of the Debtor's estate under § 541(b)(7) of the Bankruptcy Code. *See Begier v. IRS*, 496 U.S. 53 (1990).  Accordingly, the Debtor believes that it has authority to direct such funds to the appropriate parties.

## D.     The Debtor Should Be Authorized To Pay the Pre-Petition Employee Obligations Under Bankruptcy Code §§ 1107(a) and 1108

38.     The Debtor, as debtor-in-possession under §§ 1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of

11

its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a Chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*.

39.     Courts have noted that there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id*.; *see also In re Mirant Corp., et al.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to continue their respective business).  The *CoServ* court specifically noted that preplan satisfaction of pre-petition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id*.  The court provided a three-pronged test for determining whether a preplan payment on account of a pre- petition claim was a valid exercise of a debtor's fiduciary duty.  First, it must be critical that the debtor deal with the claimant.  Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim.  Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.  *Id*. at 498.

40.     Payment of each aspect of the Pre-Petition Employee Obligations meets each element of the *CoServ* court's standard.  Any failure by the Debtor to pay the Pre-Petition Employee Obligations would pose a real and substantial risk of loss of critical services now performed by the Debtor's Employees and Independent Contractor at a critical time for the Debtor and its business.  In short, the potential harm and economic disadvantage that would stem from the failure to pay the Pre-Petition Employee Obligations is grossly disproportionate to the amount of any pre-petition claim that may be paid.

41.     With respect to the Employees, the Debtor has examined options other than payment of the Pre-Petition Employee Obligations and has determined that, to avoid significant disruption to its business operations, there exists no practical or legal alternative to payment of such obligations.   Therefore, the Debtor can only meet its fiduciary duties as debtor-in-possession under Bankruptcy Code §§ 1107(a) and 1108 by payment of the Pre-Petition Employee Obligations.

**E.     Payment of the Pre-Petition Employee Obligations Should Be Authorized Under Bankruptcy Code § 105 and the Doctrine of Necessity**

42.     The proposed payments of the Pre-Petition Employee Obligations should also be authorized under § 105 of the Bankruptcy Code, which empowers this Court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). For the reasons set forth herein, and in light of the Debtor's critical need to preserve the value of its business, among other things, preservation of the Debtor's workforce and its morale, payment of the requested salary and benefits is proper under § 105 of the Bankruptcy Code.

43.     Payment of the Pre-Petition Employee Obligations is further supported by the "doctrine of necessity."   This is a well-settled doctrine that permits a Bankruptcy Court to authorize payment of certain pre-petition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that, where the debtor "cannot survive" absent payment of certain pre-petition claims, the doctrine of necessity should be invoked to permit payment); *CoServ*, 273 B.R. at 497 (stating willingness "to apply the doctrine of necessity. . . in appropriate cases."); *see also In re Babcox & Wilcox Co.*, 274 B.R. 230, 256 n. 208 (Bankr. E.D. La. 2002) (noting that debtors had been "authorized . . . to pay many of their [non-asbestos] debts . . . under . . . 'doctrine of necessity'") (*citing NextWave Pers. Commc'ns*

13

*Inc. v. F.C.C.*, 254 F.3d 130, 136 (D.C. Cir. 2001)); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of pre-petition obligation when essential to the continued operation of the debtor."). Courts have recognized the applicability of the doctrine of necessity with respect to the payment of pre-petition employee compensation and benefits. *See, e.g., Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-89 (S.D.N.Y. 1987) (under "necessity of payment" doctrine, it is appropriate for Bankruptcy Court to defer to Debtors' business judgment in permitting payment of certain workers' compensation claims); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to payment of a pre-petition claim where such payment is essential to the continued operation of the debtor.").

44.     Accordingly, for all of the foregoing reasons, the Debtor submits that cause exists for granting the relief requested herein.

## REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

45.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a pre-petition claim within twenty-three (23) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Based on the foregoing, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support the requested relief being granted immediately.

## SIMILAR RELIEF GRANTED

46.     Numerous courts, including this Court, have permitted the payment of pre-petition compensation, benefit and expense reimbursement obligations on the first day or in the early stages of other Chapter 11 bankruptcy cases. *See, e.g., In re Buccaneer Resources, LLC, et al.*, Case No. 14-60041 (Bankr. S.D. Tex. June 4, 2014) [Docket No. 39]; *In re ATP Oil & Gas*

*Corporation*, Case No. 12-36187 (Bankr. S.D. Tex. August 21, 2012) [Docket No. 136]; *In re Spectrum Jungle Labs Corp., et al.*, Case No. 09-50455 (Bankr. W.D. Tex. Feb. 5, 2009) [Docket No. 48]; *In re Pilgrim's Pride Corp., et al.*, Case No., 08-45664 (Bankr. N.D. Tex. Dec. 2, 2008) [Docket No. 65]; *In re Scotia Development LLC*, Case No. 07-20027 (Bankr. S.D. Tex. Jan. 24. 2007) (Docket 73]; *In re The Bombay Co., Inc.*, Case No. 07-44084 (Bankr. N.D. Tex. Sept. 20, 2007) [Docket No. 64]; *In re CEI Roofing, Inc. et al.*, Case No. 04-35113) (Bankr. N.D. Tex. May 5, 2004) [Docket No. 42].

## RESERVATION OF RIGHTS

47.     Nothing contained herein is or should be construed as, (a) an admission as to the validity of any claim against the Debtor, (b) a waiver of the Debtor's right to dispute any claim on any grounds, (c) a promise to pay any claim, (d) an assumption or rejection of any executory contract or unexpired lease pursuant to § 365 of the Bankruptcy Code or (e) otherwise affecting the Debtor's rights under § 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Order.  If this Court grants the relief requested herein, any payments made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## REQUEST FOR WAIVER OF STAY

48.     To the extent that any aspect of the relief sought herein constitutes a use of property under § 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  As described above, the relief sought in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its business and preserve the value of its estate.  Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by this rule, as the exigent nature of the relief sought herein

justifies immediate relief.

## **NOTICE**

49.     Notice of this Motion has been or will be provided to (a) (1) the Employees, (2) the Independent Contractor, and (b) (1) the Debtor and the Debtor's professional; (2) the United Sates Trustee for the Southern District of Texas; (3) Bank of America, N.A., as Administrative Agent and Lender; (4) Regions Bank, as a Lender; (5) Wells Fargo Bank, National Association, as a Lender; (6) the 20 largest unsecured creditors of the Debtor; (7) the Internal Revenue Service; (8) all statutory committees appointed in the case; (9) all parties requesting notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (10) all parties of whom the Court orders notice.  The Debtor submits that no further notice of this Motion is required.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing (but not directing) the Debtor (i) to continue its Employee Programs, (ii) to immediately pay the Pre-Petition Employee Obligations to the Employees and make payments up to an aggregate amount not in excess of the 507(a)(4) Limit as to any Employee, and (iii) granting such further relief as may be just and necessary under the circumstances.

[*Remainder of Page Intentionally Left Blank*]

Dated:  September 18, 2015.

Respectfully submitted,

DIAMOND McCARTHY LLP

By: */s/ Kyung S. Lee*
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
(713) 333-5125
Jason M. Rudd
TBA No. 24028786
jrudd@diamondmccarthy.com
(713) 333-5129
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
(713) 333-5127
909 Fannin, Suite 1500
Houston, Texas  77010
(713) 333-5100  Telephone
(713) 333-5195  Facsimile

PROPOSED ATTORNEYS FOR
HAVERHILL CHEMICALS LLC,
DEBTOR AND DEBTOR-IN-
POSSESSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 18, 2015, a true and correct copy of this Motion was served on those parties on the attached service list by the method indicated, within one business day of the filing.

*/s/ Charles M. Rubio*
Charles M. Rubio

# **<u>PROPOSED ORDER</u>**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HAVERHILL CHEMICALS LLC,** | § | **CASE NO. 15-34918** |
| | § | |
| **DEBTOR.** | § | **(Chapter 11)** |
| | § | |

### ORDER (I) AUTHORIZING DEBTOR TO PAY PRE-PETITION EMPLOYEE WAGES, SALARIES, REIMBURSABLE EMPLOYEE EXPENSES, EMPLOYEE BENEFITS AND OTHER OBLIGATIONS; AND (II) DIRECTING ALL BANKS TO HONOR CERTAIN RELATED PRE-PETITION TRANSFERS
(Relates to Docket No.        )

Upon the motion of Haverhill Chemicals LLC (the "Debtor") for entry of an order (1) authorizing the Debtor to pay pre-petition employee wages, salaries, reimbursable employee expenses, employee benefits and other obligations; and (2) directing all banks to honor certain related pre-petition transfers (the "Motion")[1]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(b) and 1334; and proper and adequate notice of the Motion and the hearing thereon having been given; and it appearing that no other or further notice being necessary; and the relief requested being in the best interest of the Debtor and its estate and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause therefore; it is hereby

ORDERED that the Debtor is authorized, but not directed, to the extent permitted pursuant to any cash collateral order, to (i) pay or otherwise honor the Pre-Petition Employee Obligations to, or for the benefit of, the Employees under the Employee Programs; provided,

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms as set forth in the Motion.

however, that all payments under this Order shall not exceed $12,475.00 (the "507(a)(4) Limit") per individual Employee; and (ii) to continue making payments post-petition for Employee Obligations under the Employee Programs as they become due; and it is further

ORDERED that, subject to the other provisions of this Order, the Debtor is authorized, but not directed, to continue the Employee Programs and maintain the Employee Benefits in the manner and to the extent such Employee Programs and Employee Benefits were in effect immediately prior to the filing of this case and to make payments in connection with costs and fees incurred to administer such Employee Programs, including, but not limited to, payroll; expense reimbursement; medical, dental, vision and prescription drug coverage, health savings accounts, life and AD&D insurance, and paid time off benefits, to ensure the uninterrupted delivery of payments or other benefits to the Employees; and it is further

ORDERED that the Debtor is authorized, but not directed, to (i) pay any accrued but unpaid pre-petition fees owed to the Independent Contractor, provided however, such payments shall not exceed the 507(a)(4) Limit (the "Independent Contractor Fees"); and (ii) to continue to pay, on a post-petition basis, the Independent Contractor Fees for services performed by the Independent Contractor; and it is further

ORDERED that the Debtor is authorized, but not directed, to (i) pay any pre-petition fees of any Administrator (the "Administrator Expenses") and (ii) continue such payments post-petition Administrative Expenses to the extent the Debtor determines necessary to ensure the uninterrupted delivery of payments and other benefits to its Employees; and it is further

ORDERED that the Debtor is authorized (i) to pay any amounts accrued as pre-petition Deductions and Employer Payroll Taxes to the proper governmental entities and third parties entitled thereto and (ii) to continue to collect and remit the Deductions and Employer Payroll

2

Taxes on a post-petition basis; and it is further

ORDERED that the banks and financial institutions (collectively, the "Banks") upon which any checks are drawn or electronic transfers are made in payment of the obligations authorized herein, including, but not limited to, any of the Pre-Petition Employee Obligations, Employee Benefits, Reimbursable Expenses, Independent Contractor Fees and Administrator Expenses, either before, on or after the Petition Date, are hereby authorized and directed to honor, upon presentation, any such checks or wires, provided that sufficient funds are available in the applicable accounts to make such payments; and it is further

ORDERED that the Banks shall be entitled to rely on the Debtor's express instructions to the Banks regarding which of the amounts referenced in the preceding paragraph have been authorized by the Court to be paid, and no liability shall be imposed on the Banks as a consequence of such reliance; and it is further

ORDERED that any third party receiving payment from the Debtor is authorized and directed to rely upon the representations of the Debtor as to which payments are authorized by this Order; and it is further

ORDERED that all payments authorized pursuant to this Order shall be made pursuant to, and in compliance with, the terms of the cash collateral order that is approved by interim or final order of this Court; and it is further

ORDERED that the Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

ORDERED that nothing in this Order shall prejudice the Debtor's right to seek additional and further relief from this Court concerning Employee Obligations or Employee Programs nor limit the Debtor's right to make changes, in the exercise of its business judgment, concerning

any and all matters regarding employee compensation and benefits arising under their programs, plans, and policies; and it is further

ORDERED that neither the provisions of this Order, nor any payments made or not made by the Debtor pursuant to this Order, shall be deemed an assumption or rejection of any Employee benefit plan, program or contract or otherwise affect the Debtor's rights under Section 365 of the Bankruptcy Code to assume or reject any executory contract between the Debtor and any Employee; and it is further

ORDERED, notwithstanding the relief granted herein or in any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Employee, Independent Contractor or Administrator.  The authorizations granted herein are permissive and not obligatory, and the Debtor may, in the exercise of its discretion, determine whether or not to make any of the payments authorized hereunder; and it is further

ORDERED that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

SIGNED this  ___ day of _____, 2015.


_____
UNITED STATES BANKRUPTCY JUDGE