

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
09/22/2015

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HAVERHILL CHEMICALS LLC,** | § | **CASE NO. 15-34918** |
| | § | |
| **DEBTOR.** | § | **(Chapter 11)** |
| | § | |

## ORDER APPROVING (A) BID PROCEDURES, (B) SALE NOTICE, (C) ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) BID PROTECTIONS, AND (E) SCHEDULING OBJECTION DEADLINES, AUCTION AND SALE HEARING
(Docket No. 14)

Upon consideration of the motion (the "Motion")[1] [Dkt. No. 14] filed by Haverhill

Chemicals LLC (the "Debtor") seeking entry of an order authorizing and approving, among other

things, (a) the bid procedures for the sale of the Acquired Assets (the "Sale"); (b) the form and

manner of notice (the "Sale Notice") of the Sale; (c) the form and manner of notice of the

assumption and assignment, including cure amounts, of executory contracts and unexpired

leases; (d) bid protections under the terms of that certain Asset Purchase Agreement dated as of

September 18, 2015 (the "Purchase Agreement") between the Debtor and ALTIVIA

Petrochemicals, LLC (the "Stalking Horse Bidder"); and (e) scheduling objection deadlines,

auction and a final hearing to approve the sale of the Acquired Assets (the "Sale Hearing"); and

the Court having reviewed the Motion; and this Court having determined that the relief requested

is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and after

due deliberation thereon; and good and sufficient cause appearing therefor, including for the

---

[1]     Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion, the Purchase Agreement, or the Bid Procedures as applicable.

reasons stated on the record at the hearing seeking approval of the relief herein: IT HEREBY ORDERED, ADJUDGED AND DECREED THAT: [2]

A.     The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157 and 1334. Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.     The statutory and legal predicates for the relief requested in the Motion are sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.     Notice of the Motion has been given to: (1) Debtor and the Debtor's professionals; (2) the United States Trustee for the Southern District of Texas; (3) Bank of America, N.A., as Administrative Agent and Lender; (4) Regions Bank, as a Lender: (5) Wells Fargo Bank, National Association, as a Lender; (6) the 20 largest unsecured creditors of the Debtor; (7) the Internal Revenue Service; (8) all statutory committees appointed in this case; (9) all parties that have requested notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (10) all parties on whom the Court has ordered notice.  Considering the circumstances and the nature of the relief requested, good and sufficient notice of the relief granted by this Order has been given and no further notice is required.

D.     The bid procedures in the form attached hereto as Exhibit 1 (the "Bid Procedures") are fair, reasonable and appropriate, and are designed to maximize recovery with respect to the Sale.

---

[2]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. See Fed. R. Bankr. P. 7052.

E.      The Debtor has demonstrated compelling and sound business justifications for paying the Stalking Horse Bidder the Break Up Fee and the Expense Reimbursement (as defined in the Purchase Agreement) (together the "Bid Protections"), and such Bid Protections are fair and reasonable and provide a benefit to the Debtor's estate and creditors.

F.      The Stalking Horse Bidder would not have entered into the Purchase Agreement and would not have agreed to consummate the Sale if the Bid Protections were not approved.

G.      The payment of the Bid Protections under the conditions set forth in the Purchase Agreement is (a) an actual and necessary cost of preserving the Debtor's estate, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) of substantial benefit to the Debtor's estate and creditors and all parties in interest, (c) reasonable and appropriate and (d) necessary to induce the Stalking Horse Bidder to enter into and to agree to consummate the transactions contemplated by the Purchase Agreement.   Accordingly, to the extent the Bid Protections become due and payable, they shall constitute an administrative expense claim against the Debtor's estate with priority pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall be immediately payable without any further order of the Bankruptcy Court.

H.      The Debtor's proposed notice of the Sale substantially in the form attached hereto as Exhibit 2 (the "Sale Notice") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of, as applicable, the Bid Procedures, the deadline for filing objections to the Sale and entry of the Sale Order, the deadline for submitting competing bids for the Acquired Assets, and the date, time, and place of the Auction (defined below) and the Sale Hearing, and no other or further notice is required.

I.      The Assumption and Assignment Procedures (defined below) set forth herein, and the assumption and assignment notice substantially in the form attached as <u>Exhibit 3</u> (the "<u>Assumption and Assignment Notice</u>"), are reasonably calculated to provide contract counterparties (the "<u>Contract Counterparties</u>") to any of the Debtor's contracts and/or leases that may be assumed by the Debtor and assigned (the "<u>Assigned Contracts</u>") to the Accepted Bidder (defined below) with proper notice of the intended assumption and assignment of their contracts and/or leases, the procedures in connection therewith, and any Cure Amounts (defined below) relating thereto.

J.      Entry of this Order is in the best interests of the Debtor and its estate, creditors, and interest holders and all other parties in interest herein.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion, as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

### **Bid Procedures**

3.      The Bid Procedures, attached hereto as Exhibit 1, are hereby authorized, approved and made part of this Order as if fully set forth herein.  The Bid Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed Sale of the Acquired Assets. Any party desiring to bid on the Acquired Assets shall comply with the Bid Procedures and this Order.  The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

4.      Upon entry of this Order, the Stalking Horse Bidder shall deliver to the Debtor $100,000.00 representing its deposit under the Purchase Agreement.

5.      For the purposes of the Bid Procedures: (i) the Stalking Horse Bidder is deemed to be a Qualified Bidder and the Purchase Agreement is deemed to be a Qualified Bid; and (ii) the Agent, acting upon the instructions of the Lenders, shall be deemed to be a Qualified Bidder with respect to any "credit bid" pursuant to Section 363(k) of the Bankruptcy Code, and any such "credit bid" shall be deemed to be a Qualified Bid.

6.      If the Debtor does not receive at least one Qualified Bid by the Bid Deadline (other than the bid by the Stalking Horse Bidder), the Debtor will not conduct the Auction and the Debtor shall promptly proceed to seek entry of the appropriate order approving the Purchase Agreement.

7.      In the event that the Debtor timely receives one or more Qualified Bids (other than from the Stalking Horse Bidder), then the Debtor will conduct the Auction with respect to the Acquired Assets in accordance with the Bid Procedures.

8.      Subject to the final determination of this Court, the Debtor (in consultation with Agent and the Lenders)[3] is authorized to determine, in its business judgment and pursuant to the Bid Procedures, the highest or best bid (the "Accepted Bid" and the party submitting such highest or best bid being the "Accepted Bidder").

9.      In the event there are more than one Qualified Bidder, an auction (the "Auction") will be held at 10:00 a.m. (CST) on October 22, 2015 (the "Auction Date").  The Auction will be conducted at the offices of Diamond McCarthy LLP at 909 Fannin Street, Suite 1500, Houston, Texas 77010.  Only the Debtor, any Qualified Bidders who have submitted Qualified Bids, the Agent, the Lenders, and their respective professionals, shall be permitted to attend the

---

[3]      For purposes of this Order and the Bid Procedures, all matters requiring the determination of the Debtor shall be determined by the Debtor in consultation with the Agent and the Lenders.

Auction, and only Qualified Bidders who have submitted Qualified Bids shall be eligible to participate in (i.e., bid at) the Auction.

## Bid Protections

10.     The terms and conditions provided in section 8.1 of the Purchase Agreement, entitled "Approval of Break Up Fee and Expense Reimbursement," relating to the obligation to pay the Break Up Fee and Expense Reimbursement to the Stalking Horse Bidder, are hereby approved.

11.     If the Debtor selects a Qualified Bid from an entity other than the Stalking Horse Bidder as the Accepted Bid and consummates the Sale with such Accepted Bidder, then upon the consummation of such Sale the Debtor shall pay to the Stalking Horse Bidder the Break Up Fee in an amount equal to One Hundred Fifty Thousand and No/100 Dollars ($150,000.00) and the Expense Reimbursement in an amount not to exceed Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00), in accordance with the terms of the Purchase Agreement, from the proceeds of such Sale.

12.     The Debtor's estate's obligation to pay the Bid Protections shall survive termination of the Purchase Agreement, shall constitute an administrative expense claim with priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code and not subordinated in right of payment to any claims of the Lenders under section 507(b) of the Bankruptcy Code, and shall be payable in accordance with the terms and conditions of the Purchase Agreement.

## Assumption and Assignment Procedures

13.     The following procedures regarding the assumption and assignment of the Assigned Contracts in connection with the Sale (the "Assumption and Assignment Procedures")

are hereby approved to the extent set forth herein, and shall govern the assumption and assignment of the Assigned Contracts.

14.     As soon as practicable after entry of this Order, the Debtor shall serve on all Contract Counterparties an Assumption and Assignment Notice substantially in the form attached hereto as Exhibit 3, that identifies, to the extent applicable, (i) the Assigned Contract(s) with such Contract Counterparty; (ii) the name and address of the Contract Counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Debtor (in consultation with the Agent and the Stalking Horse Bidder) to withdraw such request for assumption and assignment of the Assigned Contracts prior to the closing of the Sale); (iv) the amount, if any, determined by the Debtor to be necessary to be paid to cure any existing default under such Assigned Contract(s) in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); (v) the deadlines by when such Contract Counterparty must file an objection to the proposed assumption and assignment of such Assigned Contract(s); provided, however, that the presence of any contract or lease on an Assumption and Assignment Notice does not constitute an admission that such contract or lease is an executory contract or an unexpired lease.  The original Assumption and Assignment Notice will (i) identify the Stalking Horse Bidder, and (i) contain a statement as to the Stalking Horse Bidder's ability to perform the Debtor's obligations under the applicable Assigned Contracts.

15.     All objections to the assumption and assignment of any Assigned Contract, including, without limitation, any objection to the Debtor's proposed Cure Amount or the provision of adequate assurance of future performance under any Assigned Contract pursuant to Section 365 of the Bankruptcy Code ("Adequate Assurance") must: (a) comply with the general objection procedures set forth herein; (b) identify the specific Assigned Contract(s) to which the

objector is party; (c) describe with particularity any cure the objecting party contends is required under Section 365 of the Bankruptcy Code (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim under the Assigned Contract(s); (d) attach all documents supporting or evidencing the Cure Claim; and (e) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is required to provide Adequate Assurance (collectively with the general objection procedures, the "Assigned Contract Objection Procedures").

16.     If no objection is timely and properly filed and served in accordance with the Assigned Contract Objection Procedures, (a) the Cure Amount set forth in the Assumption and Assignment Notice shall be controlling notwithstanding anything to the contrary in the Assigned Contract or any other document and the Contract Counterparty thereto shall be forever barred from asserting any other claim against the Debtor or the Accepted Bidder with respect to such Assigned Contract arising prior to the assignment thereof, and (b) the Accepted Bidder's promise to perform under the Assigned Contract shall be deemed Adequate Assurance thereunder.  To the extent the Debtor disputes any Cure Claim, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtor and the objector may agree or the Court may order, but such dispute shall not affect in any way the effectiveness of any assumption and assignment of any Assigned Contract.

17.     If at any time after the entry of this Order the Debtor identifies additional prepetition executory contracts and/or unexpired leases to be assumed and assigned to the Accepted Bidder as Assigned Contracts, the Debtor the Debtor shall serve a supplemental Assumption and Assignment Notice by facsimile, electronic transmission, hand delivery or overnight mail on the Contract Counterparty (and its attorney, if known) to each supplemental

8

Assigned Contract at the last known address available to the Debtor by no later than ten (10) calendar days before the Objection Deadline (defined below).  A Contract Counterparty receiving any such supplemental Assumption and Assignment Notice shall have until the Objection Deadline to file an objection to the assumption and assignment of its Assigned Contract(s) in accordance with the Assigned Contract Objection Procedures set forth herein.

18.     If the Debtor selects an Accepted Bid from an entity other than the Stalking Horse Bidder at the Auction, then the Debtor shall serve a supplemental Assumption and Assignment Notice by facsimile, electronic transmission, hand delivery or overnight mail on the Contract Counterparties (and their attorneys, if known) to each Assigned Contract at the last known address available to the Debtor by no later than three (3) calendar days before the Objection Deadline that (a) identifies the Accepted Bidder; and (b) contains a statement as to the Accepted Bidder's ability to perform the Debtor's obligations under the applicable Assigned Contracts.  A Contract Counterparty receiving any such supplemental Assumption and Assignment Notice shall have until the Objection Deadline to file an objection to the assumption and assignment of its Assigned Contract in accordance with the Assigned Contract Objection Procedures set forth herein.

## Sale Notice

19.     The Sale Notice is hereby approved. On or within three (3) business days following the entry of this Order, the Debtor shall cause the Sale Notice, together with copies of this Order and the Bid Procedures, to be served on (i) all entities contacted by Balmoral Advisors, LLC, the Debtor's investment banker, or known by the Debtor to have expressed an interest in entering into a transaction involving the Acquired Assets within the last six (6) months, (ii) all state and local taxing authorities or recording offices which have a reasonably

known interest in the relief requested; (iii) all insurers; (iv) all non-debtor parties to relevant contracts or leases (executory or otherwise); (v) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Acquired Assets; (vi) the United States Trustee for the Southern District of Texas; (vii) the 20 largest unsecured creditors of the Debtor and (viii) all parties that have requested notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure.

## Objection Procedure

20.     The Sale Notice shall state that any party in interest objecting to the entry of the proposed Order approving the Sale shall file written objections with the Clerk of the Bankruptcy Court and serve such objections on the following parties: (a) counsel to the Debtor: Diamond McCarthy, LLP, 909 Fannin, Suite 1500, Houston, TX, 77010 Attn: Kyung S. Lee and Charles Rubio; (b) counsel to any Official Committee; (c) counsel to Bank of America, N.A. as administrative agent for the Lenders: Bryan Cave LLP, One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO, 63102  Attn: David Unseth; and (d) the U.S. Trustee, and (e) counsel for the Stalking Horse Bidder, Edward W. Kerson, Esq., One Irving Place, U26D, New York, New York 10003, in each case to allow actual receipt of the foregoing no later than October 28 ___, 2015, at 4:00 p.m. (CT) (the "Objection Deadline").

21.     Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale and the transactions contemplated by the Sale Motion, shall file a formal written objection that complies with the objection procedures as set forth herein and comply with the Bankruptcy Rules and the Local Rules .

**Sale Hearing**

22.     The hearing to consider approval of the Sale is scheduled on <u>November 2</u>, 2015 at <u>1:30</u> <u>P</u>.m. (CT) (the "<u>Sale Hearing</u>") at the United States Bankruptcy Court for the Southern District of Texas, Courtroom <u>404</u>, 515 Rusk, Houston, TX 77002.  If no objections to the relief sought in the Sale Hearing are filed and served in accordance with this Order, no Sale Hearing may be held, and a separate Order may be presented by the Debtor and entered by this Court approving the Sale.

**Miscellaneous**

23.     The Debtor is authorized to take all actions necessary and appropriate to implement and effectuate the relief granted pursuant to this Order.

24.     Any stay of this Order, whether arising from Bankruptcy Rules 6004 and/or 6006 or otherwise, is hereby expressly waived and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

25.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

     **Signed:  September 22, 2015.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

11

**<u>EXHIBIT 1</u>**

Bid Procedures

## BID PROCEDURES

A.     <u>Background</u>.  Haverhill Chemicals LLC (the "<u>Debtor</u>") is a debtor in a chapter 11 case (Case No. __-_____ (___)) pending in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>").  The Debtor is a party to that certain Asset Purchase Agreement dated as of September __, 2015 (the "<u>Purchase Agreement</u>") between the Debtor, as seller, and ALTIVIA Petrochemicals, LLC (the "<u>Stalking Horse Bidder</u>"), as buyer, which agreement is subject to approval by the Bankruptcy Court and subject to higher and better competing bids from Qualified Bidders (defined below) for a sale transaction involving the Acquired Assets (defined below) in accordance with the Bid Procedures Order (defined below) (each, an "<u>Alternative Transaction</u>").

B.     <u>Assets to be Sold</u>.  The assets to be sold consist of substantially all of the assets of the Debtor (the "<u>Acquired Assets</u>") which includes a chemical manufacturing facility located on six hundred (600) acres near the banks of the Ohio River in Haverhill, Ohio.  Except for the Permitted Liens and the Assumed Liabilities (as such terms are defined in the Purchase Agreement), the Acquired Assets will be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under § 363(f) of the Bankruptcy Code.  The Acquired Assets are being sold on an AS-IS, WHERE-IS basis.

C.     <u>Bid Procedures Order</u>.  In accordance with the Order (the "<u>Bid Procedures Order</u>") dated _____ ___, 2015, the Bankruptcy Court established the manner in which prospective bidders become Qualified Bidders (defined below), the submission of Qualified Bids (defined below), the conduct of any subsequent Auction (defined below) and the Bankruptcy Court's approval of the Accepted Bid (defined below).  Furthermore, the Bid Procedures Order approved certain bid protections for the Stalking Horse Bidder.  Please note that all capitalized terms used but not defined herein have the meanings assigned to such terms in Bid Procedures Order.

D.     <u>Qualified Bid and Qualified Bidder</u>.  Each person or entity wishing to participate in the bid process must submit to the Debtor by the Bid Deadline (define below) the following (the "<u>Bid Package</u>"):

(a)     a written, firm, unconditional bid to purchase the Acquired Assets, not subject to any contingencies as to the validity, effectiveness and/or binding nature of the offer, including, without limitation, further due diligence review or financing, and which shall remain open and irrevocable in accordance with its terms through the entry of the Sale Order;

(b)     the bid must be in the amount of at least Three Million Five Hundred Thousand and No/100 Dollars ($3,500,000.00);

(c)     sufficient information to demonstrate that the person or entity submitting the bid has the financial wherewithal and ability to timely consummate the acquisition of the Acquired Assets on terms and conditions substantially the same as the Purchase Agreement, including evidence of adequate financing;

(d)      a signed contract substantially in the form of the Purchase Agreement, and marked to show any changes made to the Purchase Agreement; and

(e)      a good faith cash deposit in an amount equal to One Hundred Thousand and No/100 Dollars ($100,000.00) to be deposited with Seller on or before the Bid Deadline (the "Earnest Money Deposit");

A person or entity submitting a Bid Package that complies with the foregoing conditions (such compliance as determined by the Debtor)[1] is a "Qualified Bidder" and the associated bid is a "Qualified Bid." For the avoidance of doubt, the Stalking Horse Bidder is deemed to be a Qualified Bidder, and the Purchase Agreement is deemed to be a Qualified Bid, for all purposes in connection with the bid process and the Auction. The Debtor shall promptly inform the Stalking Horse Bidder and the Agent of all Qualified Bids and any information received related to the terms and conditions of such Qualified Bids.

      E.    <u>Earnest Money Deposit</u>. Each Earnest Money Deposit shall be held in escrow by the Debtor until three (3) business days after the entry of the Sale Order (the "Earnest Money Refund Date"); provided, however, the Earnest Money Deposit paid by the bidder submitting the Accepted Bid shall continue to be held in escrow by the Debtor following entry of the Sale Order. If the Accepted Bidder (defined below) subsequently defaults or breaches, then the Earnest Money Deposit submitted by such Accepted Bidder, together with any accrued interest, shall be deemed forfeited and shall be retained by the Debtor for the benefit of the Debtor's estate. Any Earnest Money Deposit paid by a bidder who is not selected as the Accepted Bidder shall be returned by the Debtor on or before the Earnest Money Refund Date. The disposition of the Deposit (as defined in the Purchase Agreement) made by the Stalking Horse Bidder shall be governed by the terms of the Purchase Agreement.

      F.    <u>Bid Deadline</u>. All Bid Packages must be submitted to the Debtor as follows:

> Haverhill Chemicals LLC
> c/o 16800 Imperial Valley Dr., Suite 499
> Houston, TX 77060
> Attn: Thomas Wells
> E-mail: twells@goradiacapital.com
>
> *With copies to*:
>
> Diamond McCarthy LLP
> 909 Fannin, 15th Floor
> Two Houston Center
> Houston, TX 77010
> Attn: Kyung S. Lee
> Email: KLee@diamondmccarthy.com

---

[1]    For purposes of these Bid Procedures, all matters requiring the determination of the Debtor shall be determined by the Debtor in consultation with the Agent and the Lenders.

*and*

> Gordon, Arata, McCollam, Duplantis & Eagan, LLC
> 1980 Post Oak Blvd, Suite 1800
> Houston, TX  77056
> Email:  cchessin@gordonarata.com

All Bid Packages must be received no later than _4_ :00 p.m. (CST) **on** October 20 **2015 (the "Bid Deadline")** ~~or such later date or time that the Debtor, in its reasonable discretion, establishes as the Bid Deadline~~.

      G.    <u>Bid Protections</u>.   If the Debtor selects a Qualified Bid from an entity other than the Stalking Horse Bidder as the Accepted Bid and the Debtor consummates the Sale with such Accepted Bidder, then upon the consummation of such Sale the Debtor shall pay to the Stalking Horse Bidder a break up fee in an amount equal to One Hundred Fifty Thousand and No/100 Dollars ($150,000.00) (the "<u>Break Up Fee</u>") and reimburse the Stalking Horse Bidder's expenses in an amount not to exceed Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) (the "<u>Expense Reimbursement</u>"), in accordance with the terms of the Purchase Agreement, from the proceeds of such Sale.  The Stalking Horse Bidder shall be entitled to credit its Break Up Fee and Expense Reimbursement at the Auction.

      H.    <u>Auction</u>.   If the Debtor receives one or more Qualified Bids, then **on [** October 28 **__, 2015] (the "<u>Auction Date</u>"), beginning at [**10**:00 p.m.** a.m. **(CST)]**, at the offices of Diamond McCarthy LLP at 909 Fannin Street, Suite 1500, Houston, Texas 77010, or at such other location as may be designated by the Debtor, the Debtor will conduct an auction (the "<u>Auction</u>") to determine the highest or best bid.  The Debtor may conduct the Auction in the manner it determines will achieve the maximum recovery for the Debtor's estate. Only the Debtor, Qualified Bidders who have submitted Qualified Bids, and their respective professionals, shall be permitted to attend the Auction, and only Qualified Bidders who have submitted Qualified Bids shall be eligible to participate in (i.e., bid at) the Auction.  The Auction may be adjourned at any time and from time to time without further notice except by announcement of the adjourned date or dates prior to or at the Auction or any adjournment thereof.

      I.    <u>Auction Process</u>.   Seller shall evaluate all Qualified Bids received and shall determine which Qualified Bid reflects the highest or best offer as the starting auction bid for the Acquired Assets (the "<u>Starting Auction Bid</u>"); provided, however, that the Stalking Horse Bidder shall have the opportunity to increase the purchase price in its Qualified Bid to a level at least One Hundred Thousand and No/100 Dollars ($100,000.00) in excess of the highest Qualified Bid received to be eligible to become the Starting Auction Bid, and the Stalking Horse Bidder shall be entitled to credit the Break Up Fee and the Expense Reimbursement against the purchase price reflect in such Qualified Bid or any subsequent Qualified Bid submitted by the Stalking Horse Bidder.  Seller shall announce its determination of the Starting Auction Bid at the commencement of the Auction.  Qualified Bidders will be permitted to increase their bids and to agree to modifications to their bids in order to make their bids more favorable to the Debtor's estate, provided that each bid subsequent to the Starting Auction Bid shall be at least One Hundred Thousand and No/100 Dollars ($100,000.00) greater than the preceding bid (the

"Incremental Bid Amount").  When evaluating the bids, the Debtor shall consider the financial and contractual terms of each bid and factors affecting the speed and certainty of closing with respect to each bid.  Such bidding shall continue until the Debtor concludes the Auction.  At the conclusion of the Auction, the Debtor shall identify the highest or best bid (the "Accepted Bid" and the party submitting such bid being the "Accepted Bidder"), The Debtor (in consultation with Agent and Lenders) shall retain full discretion and right to determine which bid constitutes the highest or best bid and should be selected as the Accepted Bid, all of which are subject to final approval by the Bankruptcy Court pursuant to the applicable provisions of the Bankruptcy Code.  No bids shall be considered by the Debtor unless a party submitted a Qualified Bid and participates in the Auction.  All of the Acquired Assets shall be sold in a single lot.  If the Debtor desires to select an Accepted Bid from an entity other than the Stalking Horse Bidder that the Stalking Horse Bidder believes is not the highest or best bid or that the Stalking Horse Bidder believes was not from a person qualified to participate in the Auction, the Stalking Horse Bidder may object to the selection of such bid as the Accepted Bid, the Bankruptcy Court shall determine which is the successful bidder.  When determining the Accepted Bid, the Debtor shall consider the face amount of the Stalking Horse Bidder's final bid notwithstanding the fact that the Stalking Horse Bidder is entitled to credit the Break Up Fee and the Expense Reimbursement against the purchase price in the Stalking Horse Bidder's final bid.  In the event that the Debtor determines in good faith that it has not received a Qualified Bid by the Bid Deadline that is a higher or better bid than the Stalking Horse Bidder's bid, the Debtor shall seek approval of the Purchase Agreement at the hearing to approve the Sale without conducting an Auction and without further motion or adjournment without the written consent of the Stalking Horse Bidder.

J.        Hearing Regarding Accepted Bid.        The hearing to consider approval of the Sale is scheduled for _November_, **2015 at** _1:30 P_.**m. (CT) (the "Sale Hearing")** at the United States Bankruptcy Court for the Southern District of Texas, Courtroom _404_, 515 Rusk, Houston, TX 77002.  The Debtor will request that the Bankruptcy Court approve the Sale represented by the Accepted Bid.  The Debtor shall be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.  If a bid from an entity other than the Stalking Horse Bidder is accepted as the Accepted Bid but fails to be consummated, the Stalking Horse Bidder's original purchase price (as set forth in Section 2.1(a) of the Purchase Agreement) shall automatically be deemed the Accepted Bid and the Debtor and the Stalking Horse Bidder shall be obligated to consummate the transaction on the terms of the Purchase Agreement.

4

**<u>EXHIBIT 2</u>**

Sale Notice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HAVERHILL CHEMICALS LLC,** | § | **CASE NO. 15-34918** |
| | § | |
| **DEBTOR.** | § | **(Chapter 11)** |
| | § | |

**NOTICE OF SALE**

      PLEASE TAKE NOTICE THAT on September  __, 2015, Haverhill Chemicals LLC (the "Debtor"), filed a motion [Docket No. __] (the "Motion") with the United States Bankruptcy Court for the Southern District of Texas (the "Court") for an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving, among other things, (a) bid procedures for the sale (the "Sale") of substantially all the Debtor's assets (as more particularly defined in the Purchase Agreement, the "Acquired Assets"), (b) bid protections for ALTIVIA Petrochemicals, LLC (the "Stalking Horse Bidder") under the terms of that certain the terms of that certain Asset Purchase Agreement dated as of _____ __, 2015 (the "Purchase Agreement"), (c) the form and manner of notice of the sale, and (d) certain related relief including the scheduling of the objection deadline and the sale hearing.  Please note that all capitalized terms used but not defined herein have the meanings assigned to such terms in Bid Procedures Order.

      PLEASE TAKE FURTHER NOTICE THAT on _____ __,2015, the Court entered an order [Docket No. ___ ] (the "Bid Procedures Order") approving the form of the Bid Procedures, a copy of which is attached, and setting certain dates and deadlines relating to the Auction, the Sale and the hearing to consider the approval of the Sale (the "Sale Hearing"), as summarized below.

      PLEASE TAKE FURTHER NOTICE THAT any party interested in becoming a Qualified Bidder and seeking additional information from the Debtor may contact Balmoral Advisors, LLC, the Debtor's investment banker, as provided below and request a confidentiality agreement (a "Confidentiality Agreement").  Upon execution of a Confidentiality Agreement, parties will be given access to the Debtor's data and may begin conducting due diligence.

               Balmoral Advisors, LLC
               Chris Cerimele, Managing Director
               10 S. Riverside Plaza, Suite 875
               Chicago, IL 60606
               Phone: 312-474-6008
               Email: ccerimele@balmoraladvisors.com

PLEASE TAK FURTHER NOTICE THAT the **"Bid Deadline" is _____ \_\_, 2015 at \_:\_\_\_ \_.m. (CST)**. A potential bidder that desires to make a bid for the Acquired Assets is required to deliver a copy of all the materials required to bid to the Debtor so as to be received not later than the Bid Deadline. The Bid Procedures include contact information for the Debtor and details of the materials that need to be submitted. Any person or entity that does not submit a bid by the Bid Deadline shall not be permitted to participate at the Auction.

PLEASE TAKE FURTHER NOTICE THAT pursuant to the Bid Procedures Order, if the Debtor receives a Qualified Bid (other than the bid by the Stalking Horse Bidder) by the Bid Deadline, **the Debtor shall conduct the Action on _____ \_\_, 2015 at \_\_:\_\_ \_.m. at the offices of Diamond McCarthy LLP at 909 Fannin Street, Suite 1500, Houston, Texas 77010**, or at such later date and time and at such alternative location as the Debtor may determine or the Court may direct. If the Debtor does not receive at least one Qualified Bid by the Bid Deadline (other than the bid by the Stalking Horse Bidder), the Debtor will not conduct the Auction.

PLEASE TAKE FURTHER NOTICE THAT the **Debtor will seek approval of the Sale at a hearing (the "Sale Hearing") scheduled to be held before the Honorable _____ at the United States Bankruptcy Court for the Southern District of Texas, Courtroom \_\_\_\_\_, 515 Rusk, Houston, TX 77002, at \_\_:\_\_ \_.m. (CST) on _____ \_\_, 2015**. The Sale Hearing may be adjourned or rescheduled by the Debtor, from time to time, without notice to creditors or parties in interest other than by an announcement of the adjourned date at the Sale Confirmation Hearing or on the Court's calendar on the date scheduled for the Sale Confirmation Hearing.

PLEASE TAKE FURTHER NOTICE THAT **responses or objections, if any, to the approval of the Sale** must be (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Rules of the Court; (iv) filed with the Court and (v) served on (a) counsel to the Debtor: Diamond McCarthy, LLP, 909 Fannin, Suite 1500, Houston, TX, 77010 Attn: Kyung S. Lee and Charles Rubio; (b) counsel to any Official Committee; (c) counsel to Bank of America, N.A. as administrative agent for the Lenders: Bryan Cave LLP, One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO, 63102 Attn: David Unseth; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Texas, and (e) counsel for the Stalking Horse Bidder: Edward W. Kerson, Esq., One Irving Place, U26D, New York, New York 10003, so as to be received **no later than _____ \_\_, 2015 at \_\_:00 \_.m. (CST) (the "Objection Deadline")**.

## <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDD PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ACQUIRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE

AGREEMENT RELATED THERETO. IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT CERTAIN OF THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: September __, 2015.

Respectfully submitted,

DIAMOND McCARTHY LLP

By: */s/ DRAFT*_____
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
(713) 333-5125
Jason M. Rudd
TBA No. 24028786
jrudd@diamondmccarthy.com
(713) 333-5129
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
(713) 333-5127
909 Fannin, Suite 1500
Houston, Texas  77010
(713) 333-5100  Telephone
(713) 333-5195  Facsimile

PROPOSED ATTORNEYS FOR HAVERHILL CHEMICALS LLC, DEBTOR AND DEBTOR-IN-POSSESSION

# **EXHIBIT 3**

Assumption and Assignment Notice

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HAVERHILL CHEMICALS LLC,** | § | **CASE NO. 15-34918** |
| | § | |
| **DEBTOR.** | § | **(Chapter 11)** |
| | § | |

**NOTICE OF (I) DEBTOR'S REQUEST FOR AUTHORITY TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (II) DEBTOR'S PROPOSED CURE AMOUNTS**

**TO ALL COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES PLEASE TAKE NOTICE THAT:**

PLEASE TAKE NOTICE THAT on _____ __, 2015, Haverhill Chemicals LLC (the "Debtor"), filed a motion [Docket No. __] (the "Motion") with the United States Bankruptcy Court for the Southern District of Texas (the "Court") for an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving, among other things (a) the sale of substantially all the Debtor's assets (the "Acquired Assets"), and (b) procedures for the assumption and assignment of executory and unexpired leases (the "Assigned Contracts").

PLEASE TAKE FURTHER NOTICE THAT on _____ __,2015, the Court entered an order [Docket No. ___ ] (the "Bid Procedures Order") granting certain of the relief sought in the Motion, including, among other things, approving: (a) the bidding procedures for the Sale of the Acquired Assets (the "Bid Procedures"); and (b) procedures for the assumption and assignment of Assigned Contracts (the "Assumption and Assignment Procedures"). Copies of the Bid Procedures Order (which incorporates the Assumption and Assignment Procedures and the Bid Procedures) are enclosed herein. Please note that all capitalized terms used but not defined herein have the meanings assigned to such terms in Bid Procedures Order.

PLEASE TAK FURTHER NOTICE THAT the **Debtor will seek approval of the Sale at a hearing (the "Sale Hearing") scheduled to be held before the Honorable _____ at the United States Bankruptcy Court for the Southern District of Texas, Courtroom _____, 515 Rusk, Houston, TX 77002, at __:__ _.m. (CST) on _____ __, 2014**. The Sale Hearing may be adjourned or rescheduled by the Debtor, from time to time, without notice to creditors or parties in interest other than by an announcement of the adjourned date at the Sale Hearing or on the Court's calendar on the date scheduled for the Sale Hearing.

PLEASE TAKE FURTHER NOTICE THAT upon the closing of the Sale of Acquired Assets, the Debtor may seek to assume and assign to ALTIVIA Petrochemicals, LLC ("the Stalking Horse Bidder") or another Accepted Bidder each of the Assigned Contracts set forth on Exhibit A hereto.  In addition, the cure amounts, if any, necessary for the assumption and assignment of the Assigned Contracts (the "Cure Amounts") are set forth on Exhibit A.

PLEASE TAKE FURTHER NOTICE THAT as soon as practicable after the conclusion of the Auction, if any party other than the Stalking Horse Bidder is the Accepted Bidder, the Debtor shall file with the Court and serve by facsimile, electronic transmission, hand delivery or overnight mail on the contract counterparty (and its attorney, if known) to each Assigned Contract a notice, by no later than three (3) days before the Objection Deadline (defined below): (a) identifying the Accepted Bidder; and (b) containing a statement as to the Accepted Bidder's ability to perform the Debtor's obligations under the applicable Assigned Contracts.

PLEASE TAKE FURTHER NOTICE THAT **responses or objections, if any, to the assumption and assignment of any Assigned Contract, including, without limitation, any objection to the Debtor's proposed Cure Amount or the provision of adequate assurance of future performance** under any Assigned Contract pursuant to Section 365 of the Bankruptcy Code ("Adequate Assurance") must: (a) comply with the general objection procedures set forth herein; (b) identify the contract(s) or lease(s) to which the objector is party; (c) describe with particularity any cure the claimant contends is required under Section 365 of the Bankruptcy Code (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim under the contract or lease; (d) attach all documents supporting or evidencing the Cure Claim; and (e) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is required to provide Adequate Assurance.  In addition, such responses or objections must be (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Rules of the Court; (iv) filed with the Court and (v) served on (a) counsel to the Debtor: Diamond McCarthy, LLP, 909 Fannin, Suite 1500, Houston, TX, 77010 Attn: Kyung S. Lee and Charles Rubio; (b) counsel to any Official Committee; (c) counsel to Bank of America, N.A. as administrative agent for the Lenders: Bryan Cave LLP, One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO, 63102 Attn: David Unseth; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Texas, and (e) counsel for the Stalking Horse Bidder: Edward W. Kerson, Esq., One Irving Place, U26D, New York, New York 10003, so as to be received **no later than _____ __, 2015 at __:00 _.m. (CST) (the "Objection Deadline")**.

**PARTIES LISTED ON EXHIBIT A HERETO ARE RECEIVING THIS NOTICE BECAUSE THE DEBTOR HAS IDENTIFIED THEM AS A POTENTIAL COUNTERPARTY TO AN ASSIGNED CONTRACT**.  Under the terms of the Assumption and Assignment Procedures, if at any time after the entry of the Bid Procedures Order the Debtor identifies additional prepetition executory contracts and/or leases to be assumed and assigned to the Accepted Bidder as Assigned Contracts, the Debtor shall serve a supplemental Assumption and Assignment Notice by facsimile, electronic transmission, hand delivery or overnight mail on the applicable contract counterparty(ies) (and its attorney, if known) to each supplemental Assigned  Contract at the last known address available to the Debtor by no later than ten (10)

days before the Objection Deadline. Such contract counterparty shall have a period from receipt of the supplemental Assumption and Assignment Notice to file with the Court any objection to the proposed cure amount or the assumption and assignment of such contract(s), as applicable, as will be set forth in the supplemental Assumption and Assignment Notice.

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**

ANY COUNTERPARTY TO AN ASSIGNED CONTRACT WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF AN ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON EXHIBIT A IN ACCORDANCE WITH THE BID PROCEDURES ORDER AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON EXHIBIT A, INCLUDING ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE ASSIGNED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.

Dated: September ___, 2015.

Respectfully submitted,

DIAMOND McCARTHY LLP

By: */s/ DRAFT*
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
(713) 333-5125
Jason M. Rudd
TBA No. 24028786
jrudd@diamondmccarthy.com
(713) 333-5129
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
(713) 333-5127
909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100 Telephone
(713) 333-5195 Facsimile

PROPOSED ATTORNEYS FOR
HAVERHILL CHEMICALS LLC,
DEBTOR AND DEBTOR-IN-
POSSESSION

EXHIBIT A

Cure Amount Schedule

| Contract Counterparty | Description of Contract of Lease | Cure Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |